UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CLOVER TECHNOLOGIES GROUP, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 13 C 1697 |
| OXFORD AVIATION, INC. and JAMES L. HOROWITZ, | ) ) ) | Chief Judge Ruben Castillo |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Clover Technologies Group, LLC ("Clover") brings this diversity action against Defendants Oxford Aviation, Inc. ("Oxford Aviation") and James L. Horowitz (collectively, "Defendants") alleging breach of contract, breach of implied warranty, common law fraud, and fraud in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "Consumer Fraud Act"), 815 Ill. Comp. Stat. 505/10a(a). Presently before the Court is Defendants' motion to dismiss Clover's complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendants' motion to dismiss is granted.

### RELEVANT FACTS

Clover is a Delaware limited liability company that is organized under the laws of Illinois and is headquartered in Ottawa, Illinois. (R. 1, Compl. ¶¶ 1, 4.) Oxford Aviation is a certified repair station under Federal Aviation Administration regulations that is organized under the laws of Maine with its principal place of business in Maine. (*Id.* ¶¶ 2, 5.) Oxford Aviation does not have a place of business in Illinois, and it does not have any employees working within Illinois; rather, Oxford Aviation's only facility is in Oxford, Maine. (R. 14, Ex. 1, Horowitz Aff. ¶¶ 5-7.)

Oxford Aviation's sole presence in Illinois consists of a website which is viewable in Illinois, marketing materials sent to potential Illinois customers upon their request, and contracts it enters into with Illinois citizens. (*Id*. ¶¶ 8-25.) Oxford Aviation personnel do not travel to Illinois for business purposes. (*Id.* ¶ 15.) Oxford Aviation does not directly solicit Illinois customers. (*Id.* ¶ 25.) All services Oxford Aviation provides to customers are performed in Maine. (*Id.*) Horowitz is Oxford Aviation's president and a citizen and resident of Maine. (R. 1, Compl. ¶¶ 2, 6.) All of Horowitz's communications with Clover were made while he was physically present in Maine. (R. 14, Ex. 1, Horowitz Aff. ¶ 31.)

Clover contacted Defendants to discuss refurbishing work Clover sought for its aircraft. (R. 1, Compl. ¶ 2.) Clover's pilot, Nate Elliott, identified Oxford Aviation as a potential service provider through its website, which lists specific attributes of the services Oxford Aviation provides. (R. 25, Ex. 1, Elliott Aff. ¶ 4.) Elliott initiated contact by e-mailing a "Web Quote Request" to Oxford Aviation. (R. 14, Ex. 1, Horowitz Aff. ¶ 30.) Horowitz responded to the request by making a phone call to Elliott. (R. 25, Ex. 1, Elliott Aff. ¶ 5.) Elliott later contacted Horowitz by phone on behalf of Clover. (*Id.*) Oxford Aviation mailed materials to Clover and delivered to Clover oral sales pitches over the telephone. (R. 1, Compl. ¶ 10.) As part of these marketing materials and sales pitches, Horowitz represented to Clover that the refurbishing work would be excellent. (*Id.* ¶¶ 10-14.) Convinced of Oxford Aviation's ability to complete the work, Clover engaged Oxford Aviation to refurbish Clover's aircraft. (*Id.* ¶ 15.) Throughout these negotiations, Oxford Aviation and its personnel—including Horowitz—remained in Maine while Clover remained in Illinois. (R. 14, Ex. 1, Horowitz Aff. ¶ 25.)

After the parties entered into an oral agreement, Clover delivered the subject aircraft to Oxford Aviation in Maine. (*Id.* ¶ 35; R. 25, Ex. 1, Elliott Aff. ¶ 10.) Oxford Aviation provided

2

refurbishing services on the aircraft at its facility in Maine. (R. 14, Ex. 1, Horowitz Aff. ¶¶ 35-36.) When Clover retrieved its aircraft from Oxford Aviation, the repairs allegedly contained significant defects, which were allegedly caused by Oxford Aviation's faulty work. (R. 1, Compl. ¶ 18.) Clover and Oxford Aviation were unable to negotiate a solution to their dispute, so Clover hired another mechanic to repair the defects Oxford Aviation allegedly caused. (*Id.* ¶ 26.) Clover seeks compensatory damages in excess of $250,000 and punitive damages in excess of $500,000, plus attorney's fees and other costs. (*Id.* at 9.)

## PROCEDURAL HISTORY

Clover filed its four-count complaint on March 5, 2013. (R. 1, Compl.) Count I alleges that Defendants are liable for fraud because they made intentionally fraudulent written and oral representations that Oxford Aviation could perform appropriate refurbishing work, Clover reasonably relied on those representations, and Clover was damaged thereby. (*Id.* ¶¶ 27-30.) Count II alleges that Defendants violated the Consumer Fraud Act by engaging in a "deceptive business practice" in the course of trade or commerce with the intent that Clover would rely on their deception, and because Oxford Aviation's deception proximately caused Clover damage. (*Id.* ¶¶ 31-36.) Count III alleges breach of contract against Oxford Aviation based on its "faulty and substandard" refurbishing work. (*Id.* ¶¶ 37-43.) Finally, Count IV alleges breach of warranty against Oxford Aviation premised on its promises that the refurbishing work would be of a superior quality. (*Id.* ¶¶ 44-47.)

On May 2, 2013, Defendants filed a motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), and to dismiss Counts I and II of the complaint and Plaintiff's prayer for punitive damages and attorney's fees pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 13, Defs.' Mot. at 1.) Defendants attached the affidavit of Horowitz to

3

the memorandum in support of their motion to dismiss. (R. 14, Ex. 1, Horowitz Aff.) Clover responded to the motion on June 20, 2013, and attached Elliott's affidavit. (R. 25, Ex. 1, Elliott Aff.) Defendants filed their reply on July 9, 2013. (R. 27, Defs.' Reply.)

## LEGAL STANDARD

Rule 12(b)(2) provides for dismissal where a court lacks personal jurisdiction over a party. Fed. R. Civ. P. 12(b)(2). Once the defendant moves to dismiss the complaint under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In ruling on a motion to dismiss pursuant to Rule 12(b)(2), a court may consider matters outside of the pleadings. *See id.* When a court rules on personal jurisdiction based on the submission of written materials without holding an evidentiary hearing, the plaintiff is only required to make out a *prima facie* case of personal jurisdiction. *Id.* (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). In determining whether the *prima facie* standard has been satisfied, the Court resolves any conflicts in affidavits or other supporting materials in the plaintiff's favor. *Id.* (quoting *Nelson by Carson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983)).

"A federal court sitting in diversity has personal jurisdiction only where a court of the state in which it sits would have such jurisdiction." *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008) (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997)). The Illinois long-arm statute contains a "catch-all" provision that confers personal jurisdiction over defendants on any basis permitted by the Illinois and United States constitutions. 735 Ill. Comp. Stat. 5/2-209(c). "Thus, the 'catch-all' requirements are co-extensive with the state and federal constitutional requirements." *Citadel Grp.*, 536 F.3d at 761.

4

Both the Illinois constitution and the United States constitution require that the assertion of personal jurisdiction over a nonresident defendant comport with due process. *Hyatt Int'l*, 302 F.3d at 715. Although the Illinois Supreme Court has held that Illinois and federal due process requirements "hypothetically might diverge in some cases," *id.* (discussing *Rollins v. Ellwood*, 565 N.E.2d 1302 (Ill. 1990)), the Seventh Circuit has repeatedly determined that no meaningful difference exists between federal and Illinois due process standards, *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 757 (7th Cir. 2010). Neither party here suggests that recent Illinois caselaw might require more due process than federal standards. Accordingly, a single due process analysis is sufficient to determine whether this Court may exercise personal jurisdiction. *Hyatt Int'l*, 302 F.3d at 715.

Exerting personal jurisdiction over a nonresident defendant comports with due process where the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash. Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). What the standard means in a particular case depends on whether the Court asserts "general" or "specific" jurisdiction. *RAR*, 107 F.3d at 1277. Specific jurisdiction refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum and is determined by reference to the particular conduct alleged in the suit. *Id.*; *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). "Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities," and the exercise of jurisdiction would "comport with traditional notions of

fair play and substantial justice." *Tamburo*, 601 F.3d at 702 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Int'l Shoe*, 326 U.S. at 316). General jurisdiction, on the other hand, is applicable to actions unrelated to the defendant's contacts in the forum state, and it is permitted only where the defendant has "continuous and systematic general business contacts" with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). This standard is high, as "the contacts must be sufficiently extensive and pervasive to approximate physical presence." *Tamburo*, 601 F.3d at 701.

## ANALYSIS

Defendants first move to dismiss the complaint for lack of personal jurisdiction. (R. 13, Defs.' Mot. ¶ 3.) Defendants argue that they have not had sufficient contacts with Illinois to allow the Court to exercise specific personal jurisdiction over them, and that they have not engaged in the type of permanent and systemic activity in Illinois that would justify a finding of general personal jurisdiction. (R. 14, Defs.' Mem. at 4.) Clover argues that it has met its burden of making a *prima facie* showing that this Court's exercise of personal jurisdiction over Oxford Aviation comports with due process. (R. 25, Pl.'s Resp. at 6.)

**I.     Whether the Court should exercise specific personal jurisdiction over Defendants**

Clover contends that the exercise of specific personal jurisdiction is appropriate here because its claims against Oxford Aviation arise out of Oxford Aviation's conduct within Illinois. (*Id.* at 3-6.) Specifically, Clover contends that Defendants purposefully directed their actions toward Illinois because Horowitz made a sales pitch to Elliott over the phone while Elliott was in Illinois; that Oxford Aviation sent marketing materials to Elliott in Illinois; and that these allegedly fraudulent communications induced Clover to rely on Defendants' misrepresentations in Illinois. (*Id.* at 4.) Clover contends that "all communications, negotiations

6

and representations" between its agent, Elliott, and Oxford Aviation occurred while Elliott was physically present in Illinois. (*Id.* at 3-4.) Clover contends that these communications "were specifically directed to an Illinois citizen." (*Id.* at 4.) Clover argues that these communications, along with the fact that the effects of Oxford Aviation's alleged fraud were felt in Illinois, demonstrate that the fraud was "directed to, committed in, and caused harm to Plaintiff in Illinois," justifying the Court's exercise of general personal jurisdiction over Defendants. (*Id.* at 4-5.) Clover also argues that the Court's exercise of specific personal jurisdiction is proper because Oxford Aviation entered into a contract with Clover while Clover was physically present in Illinois, and Clover's performance of that contract occurred in Illinois. (*Id.* at 5-6.)

The Defendants' physical presence in Illinois is not required, as "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)). The purposeful availment requirement, however, "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* at 475 (internal citations and quotation marks omitted).

Here, it is undisputed that Defendants remained in Maine throughout their communications with Clover. Clover contends, however, that Defendants' communications "were specifically directed to an Illinois citizen," and cites *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 281 (7th Cir. 1990), for the proposition that "[w]here a relationship is naturally based on telephone and mail contacts, these contacts can justify jurisdiction over a defendant." (R. 25, Pl.'s Resp. at 4.) The business relationship in

*Heritage House* is readily distinguishable, however, from the one at issue here. There, the defendant initiated the relationship by sending the plaintiff a letter; the relationship continued for over a year; and the service the defendant offered—investment advice—was provided entirely via telephone and mail. 906 F.2d at 279-81. Here, Defendants did not initiate the transaction; Clover did. (R. 1, Compl. ¶ 2.) The contract called for a one-time transaction, the performance of which occurred in Maine. (*Id.* ¶¶ 16-17.) The relationship between Oxford Aviation and Clover was not "naturally based" on telephone and mail like the relationship in *Heritage House* because refurbishing work does not naturally occur over the telephone. Instead, Clover both dropped off and picked up the aircraft in Maine, where Oxford completed the refurbishing work. (*Id.*) Thus, Clover's reliance on *Heritage House* is misplaced.

Instead, a more appropriate comparison case for to the contacts Defendants had with Clover in Illinois is a case from a sister court in this District, *Heller Financial, Inc. v. Ohio Savings Bank*, 158 F. Supp. 2d 825 (N.D. Ill. 2001). There, the only contact the out-of-state defendant had with Illinois was the contract at issue, which the defendant signed in Florida. *Id.* at 829. The plaintiff initiated the negotiations of the contract, which all took place via telephone and facsimile, and none of the defendant's agents traveled to Illinois. *Id.* Quoting *RAR*, 107 F.3d at 1279, the district court in *Heller* concluded that the contract at issue had "no substantial connection with Illinois (other than plaintiff's location there which alone is insufficient to support jurisdiction)." *Heller Fin.*, 158 F. Supp. 2d at 829 (internal alterations omitted).

Clover also relies on the "effects test," arguing that the effects of Defendants' alleged fraud are felt in Illinois and thus the Court's exercise of personal jurisdiction is proper. (R. 25, Pl.'s Resp. at 4-5) (citing *George S. May Int'l Co. v. Xcentric Ventures, LLC*, 409 F. Supp. 2d 1052, 1056 n.2 (N.D. Ill. 2006)). The "effects test," which was initially articulated in *Calder v.*

*Jones*, 465 U.S. 783, 788-89 (1984), is applied in the Seventh Circuit as an "express aiming test." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 445 n.1 (7th Cir. 2010). The express aiming test "focuses attention on whether the defendant intentionally aimed its conduct at the forum state, rather than on the possibly incidental and constitutional irrelevant effects of that conduct on the plaintiff." *Id.* In other words, the "effects test" is simply another iteration of the inquiry into whether Defendants' contacts with Illinois were intentional. Clover's allegation that "[t]he effect of the fraud was felt in Illinois, where the aircraft operates from, where Clover is located, and where Clover made decisions in reliance upon the misrepresentations," does not change the fact that Defendants' contacts with Illinois were only by phone and only as a result of Clover's initiation of the contract negotiation. (R. 25, Pl.'s Resp. at 4.) Clover has failed to allege any facts that would establish Defendants' intent to solicit or conduct business in Illinois other than Defendants' response to Clover's inquiries.

Finally, Clover contends that "[t]he contract between Defendant and Clover also supports personal jurisdiction." (*Id*. at 5.) "[A] contract between a state resident and an out-of-state defendant alone does not automatically establish sufficient minimum contacts. Instead, [courts] consider the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing in determining whether there were sufficient minimum contacts." *Citadel Grp.*, 536 F.3d at 761 (quoting *Burger King*, 471 U.S. at 478-79) (internal citation and quotation marks omitted). Clover concedes that "Defendant's performance under the contract was to occur in Maine," but argues that its performance "as well as the relevant contract formation events occurred in Illinois." (R. 25, Pl.'s Resp. at 5.) Neither of those allegations is entirely true; as has already been established, Clover delivered the aircraft

to and retrieved it from Maine as part of its performance under the contract. (R. 1, Compl. ¶¶ 16-17.) Additionally, the "relevant contract formation events" occurred electronically and via telephone and mail between one party in Illinois and one party in Maine, not, as Clover alleges, in Illinois. (R. 25, Ex. 1, Elliott Aff. ¶¶ 5-6.) The fact that Clover was in Illinois during the contract negotiation and formation does not provide a basis for the Court to exercise jurisdiction over Oxford Aviation. *Citadel Grp.*, 536 F.3d at 761; *see, e.g.*, *Jamik, Inc. v. Days Inn of Mount Laurel*, 74 F. Supp. 2d 818, 823 (N.D. Ill. 1999) (finding insufficient contacts to justify the exercise of specific jurisdiction over defendants where the only contact defendants had with Illinois was the contract, which plaintiff initiated the negotiation of and defendants signed in New Jersey; defendants never traveled to Illinois during their dealings with the plaintiff; and the subject goods were delivered to and installed in New Jersey).

Defendants have neither purposefully availed themselves of the benefits and protections of Illinois law nor purposefully directed their activities at Illinois such that the Court has a basis to exercise specific personal jurisdiction over them in this suit.

## II.     Whether the Court should exercise general personal jurisdiction over Defendants

Next, this Court examines whether Oxford Aviation's contacts with Illinois are sufficient to make Oxford Aviation amenable to general personal jurisdiction. Clover argues that this Court should allow discovery on the question of general personal jurisdiction, and that a determination that no general personal jurisdiction exists would be premature. (R. 25, Pl.'s Resp. at 6.) Once Defendants moved to dismiss based on lack of jurisdiction, however, Clover had the burden to make a *prima facie* showing that jurisdiction exists. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000). General jurisdiction arises when a defendant's contacts with the forum are continuous and systematic.

10

*Helicopteros Nacionales*, 466 U.S. at 416. Sporadic, or even frequent, transactions within a state are not sufficient to give rise to general personal jurisdiction; rather, the entity must be so enmeshed in the forum stated that it may be "fairly regarded as at home" there. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (2011).

Plaintiff was Oxford Aviation's only Illinois-based customer in the past three years, although it has had at least two additional Illinois-based customers in the past. (R. 25, Ex. 1, Elliott Aff. ¶ 7; R. 14, Ex. 1, Horowitz Aff. ¶ 25.) Oxford's three Illinois customers do not constitute "continuous and systematic" contacts with the forum state. *See Tamburo*, 601 F.3d at 701 (defendants who maintained public websites accessible by Illinois residents and had made sporadic sales to Illinois residents did not have continuous and systematic contacts sufficient to justify the exercise of general personal jurisdiction). The uncontested facts in both affidavits make very clear that Oxford Aviation and Horowitz could not be "fairly regarded as at home in Illinois," as their contact with the state has been sporadic and isolated to individual transactions. *See Goodyear Dunlop*, 131 S. Ct. at 2853-54.

Clover additionally argues that Oxford Aviation is subject to general personal jurisdiction in this Court because it maintains an "interactive" website accessible in Illinois, although the only interactive feature Clover alleges is the ability to make quote requests. (R. 25, Pl.'s Resp. at 6.) In fact, Clover contends that it accessed Oxford Aviation's website to make such a quote request, which resulted in the transaction underlying the current suit. (*Id.* at 6-7.) The maintenance of a public website alone is insufficient to establish general jurisdiction. *Tamburo*, 601 F.3d at 701; *see Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549 (7th Cir. 2004) (a passive website that provided only general information about the company and the products it sells did not give rise to general personal jurisdiction). Clover contends that the website did not just

provide "general information," but rather "it had a lot of specific information about the services Oxford performs." (R. 25, Ex. 1, Elliott Aff. ¶ 4.) The Seventh Circuit has held that even interactive websites that allow for sporadic sales of materials to Illinois residents are not sufficient to establish general personal jurisdiction. *Tamburo*, 601 F.3d at 701. The Court thus concludes that the provision of "specific information" and the ability to contact Oxford Aviation for a quote request are similarly insufficient unless Clover can establish that through its website, Oxford Aviation "had sufficient voluntary contacts with the state of Illinois." *See Hemi Grp.*, 622 F.3d at 760; *Original Creations, Inc. v. Ready Am., Inc.*, 836 F. Supp. 2d 711, 715 (N.D. Ill. 2011) (Seventh Circuit law makes it clear that even "Internet sales, without something more, are not enough"). Clover has failed to establish any contacts Oxford Aviation had with the state of Illinois except those pertaining to the contract that gives rise to this suit. Therefore, the Court finds that exercising general personal jurisdiction over Oxford Aviation based on its maintenance of a widely accessible public website that allows potential customers to request a quote would offend traditional notions of fair play and substantial justice. Neither Defendants' activities within Illinois nor Oxford Aviation's website viewable from Illinois are continuous and systematic contacts such that the exercise of general personal jurisdiction is appropriate here.

Having found that the Court has no personal jurisdiction over Defendants, the Court dismisses the action pursuant to Rule 12(b)(2). Having dismissed the complaint for lack of jurisdiction, the Court need not address Defendants' alternative arguments for dismissal of the suit pursuant to Rules 12(b)(3) and 12(b)(6).

**CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss (R. 13) is GRANTED. Clover's complaint is dismissed without prejudice to refiling in a proper forum.

ENTERED: _____
**Chief Judge Ruben Castillo**
**United States District Court**

**Dated: November 13, 2013**